Final case on our call this morning is Agenda No. 17, Case No. 107-146, Jerry Slovinski v. James Elliott. Mr. Leahy, you may proceed when you're ready. Thank you, Governor. May it please the Court. I'd like to start off first by saying what I don't believe this appeal is primarily about, and that is punitive damages. I think instead, first and foremost, this appeal is about two other things. Number one, the standard of review, and number two, the abuse of discovery. The issue presented is, with regard to the standard of review, must reviewing courts adhere to and apply standards of review to jury verdicts before replacing them with their own? And secondly, with regard to discovery abuse, may a litigant refuse to respond to any discovery requests, violate court orders compelling that discovery, and then be allowed to criticize a verdict claiming it is not supported with evidence the defendant failed to divulge? That doesn't mean I'm not going to talk about punitive damages. It certainly is an element, and it was well briefed, and I'll have some comments about it. But I think that the issues of standard of review and discovery of abuse are more central to what happened in the courts below. First of all, with regard to the trial court, the trial court must find, before it replaces a jury verdict on punitive damages, that that verdict was the result of passion, prejudice, bias, corruption. And it can only enter a remitter if it is required under your rule. The trial court discussed the facts of the case with regard to several other issues, and then, at the end of the case, he made some general acknowledgments about the purposes of punitive damages, and after noting the compensatory amount, held that an award of punitive damages in the amount of $1 million is sufficient to punish the defendant and deter others from committing a similar offense. There very simply was no finding of any passion, prejudice, bias. And in this regard, the NC Illinois Trust case is very instructive, and it was debated in the briefs. It's a third district 2001 case in which the trial court reduced a punitive damages award of $1.3 million to $450,000. The appellate court said, the trial court did not have the power to speculatively and gratuitously negate a jury's verdict. It cannot overturn simply because he or she would have computed damages differently. The trial court made no specific findings, nor did it determine that the jury verdict was the product of passion or prejudice. Instead, it stated only that it found the damages to be excessive. Because the trial court indicated that it did not believe that the evidence supported the verdict, the appellate court has no way to review the propriety of the decision. And this is the NC Illinois Trust court speaking. The trial court must set forth its reasons for remitting that award. Very simply, in this case, none of those elements were present. The trial court did not go through and make a finding of passion and prejudice. It did not find any support in the record, obviously, for that. Would this court be writing on a new slate in making that requirement for trial courts? In other words, is there authority that says that the trial court shall make findings of fact and conclusions? Very definitely, Your Honor. In fact, that was the holding in the NC Illinois Trust case, the 3rd District 2001 case, that the trial court does have the obligation to go ahead. And before it just sets aside the jury verdict and supplants it with its own, it has to go ahead and give the jury verdict discretion. And it can only do it if it finds that there was some sort of passion or prejudice, something that the plaintiff's attorney said, something that bound the jury up and caused them to become inflamed or something. And there was simply no mention of any of that. In this particular case, the only mention was that the court felt that a lower sum than the jury felt was sufficient to deter others from doing the same conduct. And you have a similar abuse of discretion argument with respect to, because I know you have alternate claims of relief here, that likewise the appellate court abused discretion even if we believe the trial court did the right thing. Is that right? Exactly, Your Honor. And the best proof of that, frankly, is in a very short dissent by Justice O'Brien, who for the first time mentions the abuse of discretion standard. It was not mentioned in the appellate court decision. And Justice O'Brien said, that's our standard. And the appellate court seemed to rule that it had to be almost a one-to-one basis with compensatory? That's exactly right, Your Honor. Your Honor, the appellate court invoked the Brown v. Farkas decision in which, and in that particular case you had a contract dispute really between a couple of individuals. And then one individual claimed that the other one had sexually molested his daughter and reported it to DCFS. And in that particular case, the appellate court said that the $1 million in punitive was excessive and it reduced it to exactly the amount of the compensatory damages in that case, $50,000. Now, as long as we're on that case, let me go forward and discuss that. First of all, I'd say this, that the Brown case is very distinguishable from our case because our case is really a business defamation case. It is not just a personal dispute between a couple of people. In our case, you had, and frankly, this is the third purpose of the imposition of punitive damages, and that is to deter others from similar conduct. And in our case, essentially what happened was the CEO went into a meeting with his creditors, knowing that if the creditors found out about all the losses that the company had sustained over the past several months, that the creditors would cut off this telephone time. Essentially, he was reselling time from WorldCom. And the plaintiff in this action was the CFO of the company. The plaintiff, Jerry Slavinsky, had gone ahead and prepared all these financial documents. He had prepared the quarterly financial statements. So in doing that, there was no intent to harm the plaintiff, but simply to delay creditors. Exactly. It was financially motivated. He did it for his own purposes. Is it a factor to be considered in reducing the punitive damages? I think what the courts would say is what the potential harm is, is worth considering. And in this case, the potential harm is considerable. He attacked not just the plaintiff professionally in his professional capacity as an accountant, but he also attacked him personally, attacked his family, attacked his family relationships. So while he, as far as he was concerned, he really didn't care about the plaintiff in particular. The plaintiff wasn't targeted, but he certainly intended to do this in a calculated, deliberate manner for his own financial benefit. It's frankly similar to the Ford case where you have a drunk driver, Your Honor, the drunk driver goes out on the road. He doesn't intend to hit anybody. He intends to get home or whatever. But it's the potential harm that attaches to the act that is the most critical factor and how reprehensible that particular act is. Mr. Leahy, are there constitutional concerns regarding the punitive damages issue? Absolutely, Your Honor. And there have been a series of Supreme Court and federal cases culminating in the Mathias decision of the Seventh Circuit. Probably the seminal case of the Supreme Court is the State Farm v. Campbell case. And that was a case in which the plaintiff complained that the settlement policies of State Farm were fraudulent, essentially. And a $1 million compensatory award was made and a $145 million curative award was made. And that was struck down by the Supreme Court in an opinion by Justice Kennedy and what the justice said in that particular case was, and this is cited in the defendant's brief and our brief. Justice Kennedy commented about past punitive damages cases, and he said, These cases demonstrate that few awards exceeding a single-digit ratio to a significant degree will satisfy due process. Justice Kennedy also went on to say that ratios are instructive, not binding. He specifically declined to enter a bright-line ratio rule. And he said something which really applies directly to our case. He said, The stated ratios greater than those upheld may comport with due process, where the compensable harm is slight or difficult to quantify, but the conduct is egregious and the potential for harm is great, which is exactly what we have here. I thought, according to the jury's verdict, the plaintiff suffered no damages to his reputation. Out-of-pocket expenses, lost wages, or pain and suffering. That's correct, Your Honor. The compensatory damage was in the sum of $81,600, I believe, for emotional distress. You have the verdict form probably right in front of you there. I think that that's what it was for. So the total amount of compensatory damages is $81,600. The jury also awarded $2 million for punitive damages. The trial court then remitted $1 million out of the $2 million, and that brought the verdict down to $1,081,600. And then the appellate court said that they are going to invoke Brown and bring the punitives down to exactly the same level, $81,600, as the compensatory. So essentially the verdict went from $2,081,600 to $162,000, something like that. So that's what it was. And essentially that's the argument of the defendant in this case, that, oh, we only have $80,000 in compensatories and we have $2 million in punitives, and this far exceeds the ratios of so many of these other cases. But if you look in particular at the Mathias case, which was authored by Judge Posner, he says that the Supreme Court did not set out a rule, a ratio, because it would be a single-digit ratio, because that would be unreasonable. And in that particular case, which was the bed bug case, where I think it was Motel 6, knew it had a problem of infestation, but they didn't want to pay, I think it was the $500. Was there a suggested ratio not to exceed ten times? They said that, I think I have the quote right here, commenting upon past punitive damages, these cases demonstrate that few awards exceeding a single-digit ratio to a significant degree will satisfy due process. Justice Posner, in the Mathias case, which came out right after State Farm, said, and in fact approved a ratio of, I think it was 37.2 to 1 in the Mathias case. Because, and that's the problem with ratios, mathematical ratios. As soon as you decide on a ratio, a case pops up which falls outside that range. And in this case, the courts have recognized the type of case which is likely to fall outside the single-digit ratio range. And that's the case where you have the slight harm or the difficult-to-quantify harm, and we certainly had that in this case, difficult-to-quantify. I mean, a plaintiff, he doesn't know what phone calls he missed. He doesn't know who's talking about him behind his back. That's a very difficult burden of proof. You have to, and in this particular case, the compensatories, as I said, were 81,600, because the distress that it caused the plaintiff was clear. There was no question about it in this case. He had to move away. He moved away from his family while his girls were growing up. It upset his wife and himself. The appellate court actually goes through the damages and sets them out quite well. So in the bed bug case, there was 5,000 punitive, excuse me, compensatory damages and something like 180-some in punitive damages. Is there a level of reasonability that should be applied to punitive? Absolutely. Absolutely, it must be applied. In relation to what? Well, what the Supreme Court has said is that there should be a level of reasonability and that there are three items to consider. Number one, the reprehensibility of the conduct. And all the cases agree that that is the number one consideration and should be the number one consideration. Number two is the ratio between compensatory and punitive damages. And number three is whether or not there is any criminal penalty associated with that particular crime. And as a matter of fact, in the Brown case, there was a criminal penalty. And I think that, frankly, there's a legitimate purpose, social purpose, in not discouraging complaints of sexual abuse to authorities. And the penalty in that case was $500. And I think the court took that into consideration when it lowered the punitive damage verdict in that particular case. But in our particular case, what's most important, since there is no criminal penalty that attaches to this, and I think this is what the jury picked up on, when employers are in a situation in which they can get out of financial trouble by throwing an employee under the bus, I think this jury was saying, don't do it. Because if you do do it, it may cost you money. And in this particular case, this company was losing $5 million a month. This is a multi-million dollar company. They were getting time from WorldCom and then they were reselling it on the Chicago market. And they were, and the defendant, Elliott, was at the top of this company. And the evidence is he had to either put cash into that company or get credit extended. So he went to that meeting and they wanted to see his financials. They wanted to know exactly what his situation was. And he said, well, I don't have them and I don't have them because Jerry Slavinsky was doing this and doing that and doing this and doing that. What was the standard of review, Mr. Lee, for the appellate court as to the remitted or issued by the trial judge? Abusive discretion, Your Honor. That is it. And I don't think those words appear once in that opinion. So this might be a difficult question to answer from your position. But as you look, I know you fault both the trial court judge in issuing a remitter of a million and then the further remitter issued by the appellate court. Do you find the nature of the action done by the appellate court more egregious than that of the trial court? And the reason I ask that, I suspect that defense counsel is going to come up here and say the trial court excessiveness meant passion and prejudice. So I just wondered your take on that as you look at the court. Well, I think since they both amounted to a million dollars, I think they were equally egregious. But I would say that the appellate court opinion is more devoid of what needed to be there than the trial court opinion. You know, on the other hand, though, if the court is saying about the trial court opinion, well, this is what it said, and we can infer from that that it meant to say that there was passion or prejudice. I would say, you know, if you're saying is all that happened is they forgot to check that box, the passion and prejudice box, I'd say that's a pretty darn important box to check. And that's his job. And that's the job that you all have told him is his job. And he didn't do that. And if, in fact, I believe, if he would have done that, and if either of them perhaps would have done that, if they would have gone down that road and they would have recognized in order to supplant this verdict with a substitution of judgment on our own as to what is a sufficient amount to deter, I think they would have said, okay, we have to show passion and prejudice. Was it present? It wasn't present. And I think that's the purpose of a standard of review, to require the courts below to go through a process before they jump to the end and substitute their judgment. And I think if they would have gone down that road, they would have arrived at a different place. I would ask this court, finally, not to remand the case. I think that it's appropriate for a reversal and reinstatement in the case. The defendant violated court order after court order after court order. And he is, frankly, the cause of his own, he's provided himself with the basis of his argument. He's saying that, in fact, this verdict is excessive. And the trial court dealt with that specifically when the trial court said, the defendants refused to provide the net worth of their corporation in order to give the jury a guide or barometer of their wealth. That was the finding of the trial court based upon the violations of court orders by the defendant. Thank you. Good morning, Justices of the Supreme Court. Jeff Guzik for the defendant. May it please the court. I agree with Mr. Leahy. We can narrow the issues here. I do believe it is about punitive damages, and I do believe it is about the standard of review. He's made much of the abuse of discretion standard that the appellate court may or may not have addressed with the trial court. But it seems to me we're also in the same place here in front of Supreme Court Justices. The question is not, what case can Mr. Leahy present to this court that would substitute the judgment of the appellate court or the trial court? But this case is, did the appellate court abuse their discretion in deciding to rely on, for example, Brown v. Farkas? Mr. Leahy and I have a difference of opinion on the characterization of this case, and it's kind of dichotomous. On the one hand, Mr. Leahy feels that $81,600 is not a big deal. It doesn't even begin to compensate the plaintiff for his injuries, even though the jury said that that was fine. Upon review, the trial court judge, Robert Gordon, also found that it was substantial and right on as far as compensating the plaintiff for his injuries. The appellate court also did that, so I have not, as a subject of this appeal or my response, brought up anything regarding the $81,600 emotional distress damages. I would say this, though. It is substantial. $81,600 is a lot of money to most average American Joes. The punitive award, as it stands right now, is $81,600. The total award is $163,000. I believe that is substantial, and it's substantial in this case. Mr. Slavinsky, qualified professional, CFO of a big company, and I think he started with our group. How did it get there, Mr. Guzek? Pardon me? How did the appellate court get there from the million that was left after Judge Gordon reduced to the $81,600? Was it just a mathematical calculation? Did they ever say that Judge Gordon abused his discretion in coming up with the million? I can refer the court to Pages 23 and 24 of the appellate order, which is attached to the plaintiff's brief, I'm sorry, Pages 83 and 34 of their brief, and that's the full discussion of the punitive damages. And what the appellate court did was almost exactly what the trial court did. They applied Brown. Now, both plaintiff and defendant have thrown many, many cases at learned officials who try to sort through this, and it is difficult. We're talking about nebulous damages or difficult-to-prove damages, emotional distress, and punitives. How do we get any guideline? I have submitted six cases, three from Illinois, three from the U.S. Supreme Court, that give us some sort of objective criteria. And it's true, there's no bright line. But, Justice Thomas, to answer your question, they applied Brown v. Farkas. They didn't apply, I think it's NC Trust Company, which was first raised by the plaintiff in his appellate brief. I'm sorry, it was first raised in his brief to the Supreme Court. Brown v. Farkas, I believe, was applied because it is by far the most on-point case we find. It's one of the few defamation cases cited by either side. The facts involve some sort of off-color sexual commentary. They also involve business dealings. Brown v. Farkas was actually Brown the plaintiff suing Farkas, the defendant, in a contract case. Somewhere in the midst of that, and maybe when the relationship between the two business partners deteriorated, there was this allegation in bad faith to DCFS that Mr. Farkas had fondled his daughter or had inappropriate contact with her. I would also suggest that kind of allegation is way more egregious. And egregiousness is important because the Supreme Court of the United States tells us so. The degree of reprehensibility of the conduct. Mr. Leahy and I agree on that's the number one criteria. But Justice Freeman brought up malice and intent. If we buy the plaintiff's theory that Mr. Elliott defamed Jerry Slavinsky not to defame Jerry Slavinsky, nothing personal, but instead did it to buy some time against his creditors with WorldCom, I think that tends to actually mitigate the egregiousness of his conduct. Was it reckless? Sure. I would buy Mr. Leahy's analogy to the recklessness of a drunk driver. They don't want to kill anyone. They don't want to hurt anyone. But then we get to. Excuse me, Mr. Gusick. Yes. But isn't it true, though? I mean, he did use a particular person's name and his background and his family and everything. So couldn't that be concluded as intentional? Absolutely. It could be. What I'm saying is, without a doubt, Mr. Brown in Brown v. Farkas intentionally defamed Mr. Farkas with probably an eye on material gain because he had a lawsuit going on a breach of contract case. Now, we're left to conjecture on why Mr. Elliott said these things. We have no evidence of how much money was lost or gained. There's nothing hard. In fact, I would say this. Discovery abuses, there were many. Mr. Elliott paid the price, $163,000 judgment against him. Defaulted so he couldn't testify at trial. A defamation per se case where damages are actually presumed. Mr. Leahy says it's difficult to prove damages for emotional distress, punitives. They're hard to give a handle on. But they're also presumed in a case where there is no defendant and $500,000 is sought for lost wage, I'm sorry, damaged reputation. $425,000 is sought for lost wages. A million dollars is sought for emotional distress. And $2 million is sought in punitive damages. And there's no defendant there and he can't testify and the defense has left the only cross-examination of the plaintiff and his wife, the only two witnesses. The jury came back and said this guy has suffered no lost wages. In fact, his wages went up. This guy has suffered no damage to reputation. What has he suffered? $81,600 in emotional distress. That is not, by the way, based on any medical bills, counseling bills, psychologists, psychiatrists, antidepressant medication, anything like that. There's nothing tangible. And it's a mystery number and what I guess it is is the jurors got together and all put a number down and then did an average. So we get this odd figure of $81,600. In any event, $81,600 makes Jerry Slavinsky whole. Another dichotomy of this is Mr. Leahy and the Illinois Trial Owners Association is saying give great deference to the jury. The defense is saying give deference to the judge or the appellate court. But the defense is also saying give great deference to the jury, at least on emotional distress. That makes him whole. I did mention Justice Thomas' own case. Substantial actual damages complained of, proven, and found by the jury. That's very distinct from this case, a case where there is no defendant, only cross-examination of the plaintiffs. Just so we're clear, there's no case to consider as to Justice Thomas? There's no appellate court case to follow on Justice Thomas? I thought I had a cite for an appellate court case, although that may have been the initial discovery issue. Okay, so I won't lean on it, but I would just distinguish it as far as actual damages. The jury then takes and awards punitive damages in an amount 25 times as great as the actual damages. Now, you, Mr. Guzek, you said that both the trial judge and the appellate court used the Farkas case, didn't you? Correct. And they came to quite a different conclusion, right? In terms of dollar amount, yes. In terms of rationale, I don't think so. Focusing on the appellate court now, they said both the jury's award of $2 million and the trial court's award of $1 million represent excessive awards. Correct. So Mr. Leahy is correct that they really didn't go through how the trial judge abused his discretion in reducing the amount in half. Well, the trial court judge wouldn't be subjected to that. The appellate court would. Well, I mean the appellate court didn't go through and say why the trial judge abused his discretion. That may be true, but I believe under Brown v. Farkas, which doesn't stand in a vacuum, by the way. Brown v. Farkas leaned on. You said the trial judge used that same case in his rationale. Yes. Where did he make a mistake where the appellate court went right? Well, what we asserted was he didn't go far enough. It was excessive. It was unreasonable. We never called for a bright line either, nor does Brown v. This is a very important distinction. Brown v. Farkas does not mandate any one-to-one ratio. In fact, most probative on that I would suggest is the Proctor v. Davis case, which comes 11 years later, Brown v. Farkas, 1986. Proctor v. Davis in Upjohn Company is in 1997, 11 years later, first district case. Proctor v. Davis takes an original judgment, if you'll excuse me, of three million actuals, 125 million in punitives. The trial court judge in post-trial motion reduces that to 35 million in punitives. And then post-trial, I'm sorry, at the appellate level is reduced further to 6 million, and they lean on Brown v. Farkas. In other words, 3 million actuals, 6 million is the final result in Proctor v. Davis. That's a two-to-one ratio. That is other justices leaning on prior cases, and after all, that's what we do in England and America. We lean on other cases. We don't necessarily pick all of them. We can't. Pick and choose what is most on point. And a quick read of Brown v. Farkas or Judge Gordon's decision at the trial court level or the appellate court level in no way mandates a one-to-one. I've given Brown v. Farkas, Proctor v. Davis, and then Stanbaugh v. International Harvester. Those are the three Illinois cases I would lean on most, and then the U.S. Supreme Court cases. One of the cases from 1993, 1996, and Campbell, I believe, is 2003, TXO, BMW, and State Farm v. Campbell, which Mr. Leahy brought up, Campbell. There was outstanding language there for some parameters to give us guidance. No one likes to twist in the wind. Plaintiffs' attorneys, defense attorneys, judges, justices, we'd like a little guidance, although we also want the freedom to use our own discretion to decide these things. So the Supreme Court has stopped short of a bright-line rule. But at the same time, they've given some hints, hey, anything outside of double digits as a ratio is probably not going to pass constitutional muster for due process. We submit that the Supreme Court is right on that, and we submit that the Illinois courts, 1st District, Brown, Proctor v. Davis, were both 1st District cases. Judge Gordon followed them. He felt in his discretion and assessing whether the jury's verdict was excessive, that it should be remitted to $1 million, the punitive damage amount. The appellate court said that wasn't enough. We're going all the way down to 81-6. They both had discretion to do that. And whether any of us disagrees or reading these cases would decide. That's not exactly right, though. I understand what you're saying as far as the trial judge. The trial judge listens to all the evidence. I'm looking now at his opinion. He applies Brown v. Farkas. He says we're $2 million out of line. He comes up with a rationale. He doesn't, as Mr. Lee, he pointed out, say anything about pride or passion and prejudice. But he makes his determination. It would seem that the appellate court, you know, just doesn't pick a number out of midair. That's why there are standards of review. You both said it's about the standard of review. The appellate court has to review this order, and I would think that somewhere indicate why the trial judge abused his discretion, relying on the same case that they relied on. Didn't the appellate court in this case just say, you know, we're determining that 81-6 is a fairer number than a million dollars and moved on? It's a good argument. It's a strong argument. And that's why my additional prayer for relief is that it would be remanded for further instructions. We've got a wide disparity between a million dollars and $81,600. I think that the justices on the appellate court are learned colleagues of us all and may need an extra chance to explain their findings. But if you read, again, Brown, Judge Gordon's assessment of Brown is almost verbatim. They cite to Hazelwood, which was a prior case, the amount of time that he spends on it, whether Mr. Lee, he likes it or not. There's one paragraph in Brown v. Farkas I could read it verbatim. And Judge Gordon incorporates all that. The punitive damage award can't be so loud that it's deafening. A punitive damage award that has no reasonable relationship to the compensatory damages is monstrous and excessive. All those things quoted in Brown, binding authority in the first district, Judge Gordon quoted. The appellate court similarly quoted. Now, I'd agree, as far as abusive discretion, there is not that term in the appellate court's finding. But I do believe their final decision overwhelmingly bears that out. That they agreed that the jury's award was monstrous and excessive. What signal has been sent to those that follow these cases? Well, if you're a plaintiff's attorney, which I am almost all the time, you may win $163,000 if somebody says the off-color remarks like Mr. Elliot said. That's incentive to take a case. Joe Citizen on the street. If you say these bad things about your employees, these untruths, you could have a judgment of $163,000 slapped on you. That's incentive. This is still very reasonable to accomplish all the purposes of both compensating the plaintiff and deterrent on behavior of defendants. If I could, Justices. I would agree, wouldn't you, Counsel, that it is not appropriate for the appellate court to just substitute their judgment for the judgment of the trial court. I'd agree with that. There has to be a reason basis. Absolutely. A finding that there was an abuse of discretion. Is that correct? I would agree with that, Justice Garment. And if you do read through the Brown v. Farkas, and it's just one paragraph, it's exactly mirrored in Judge Gordon's post-trial decision. And it is, again, enunciated by the appellate court. Now, do they say Judge Gordon abused his discretion? They don't say that in word. I believe that they say it in deed with this substantial reduction. If we agree that Judge Gordon, you know, we know he heard the case. We know that he detailed, per Brown v. Farkas, where he was going with the reduction. I guess I'm not quite understanding why there should be a remand to the appellate court to give us their rationale as to why the award should be reduced. And the reason for that is, in light of everything else, I mean, you have a dissent by a justice that points out to the majority, you know, you didn't talk about abuse of discretion here. You didn't say he abused his discretion. So why shouldn't this court, I mean, I know Mr. Lane would want us to go further, but why shouldn't we just reverse the appellate court and affirm Judge Gordon? Well, I guess one thing is we come back to abuse of discretion. Did the appellate court abuse their discretion? Not would this court analyze it differently or decide differently or plug in a different case to lean on. But did the appellate court have the discretion to decide the way they decided it? Abuse of discretion for the appellate court, as well as the trial court. I think it was Justice Garmon that asked, are we opening a new slate of bright-line rule? If there was a remand that said, justices of the appellate court or judges of the circuit court, you must set forth with particularity why you're finding this jury's verdict excessive, a product of passion or partiality or corruption. It wasn't done in Brown, and that's still good law. It wasn't done in Proctor v. Davis 11 years later, and it's still good law. The analysis is in there, and that should be followed. NC Bank, I think, I don't know if I'm saying it right, NC Illinois Bank, which the plaintiff cited to, NC Illinois Trust Company, is a 5th or 3rd district case. I'm sorry. It's a 3rd district case that was not brought up by the plaintiff at the trial level or at the appellate level, but for the first time appears here at the Supreme Court. It's very possible that Judge Gordon and the appellate court leaned on what they had in front of them, which was a binding 1st district appellate case, Brown v. Farkas. I would just add one more thing from the U.S. Supreme Court, State Farm v. Campbell. Three factors. Degree of reprehensibility of the defendant's conduct. Two, disparity between the actual or potential harm versus punitives. They're talking about racial analysis or at least some sort of connection. And three, the difference between penalties awarded and civil penalties in comparable cases. Going to the degree of reprehensibility, they look at four further factors. Is this physical harm versus economic? If it's physical, for example, in the drunk driving case, that's a higher degree of egregiousness. Secondly, is there an indifference for the health or safety of others? Mr. Elliott may have been indifferent, but not to the health or safety of Jerry Slavinsky. Perhaps his name, his reputation, but not the health or safety. Third, are there repeated actions of this kind of conduct? No. This was an isolated incident at a meeting. And fourth, we go back to Justice Freeman's initial question about intentional malice, trickery, or deceit. What was this? Was this intentional malice against Jerry Slavinsky? Or was this some sort of a he's an unintentional victim of some sort of deceit or trickery at a third party? Thank you for your time. Any other questions? Thank you. Thank you, Mr. Gusak. I just want to address one thing first, and that is the issue of whether this is a physical harm or something else. I very sincerely believe and I think the evidence proves this is a physical harm. This is a man who was forced to leave his family and go down to Florida for several years because he had an opportunity for a job down there and he was afraid that if he stayed in Chicago that what happened to him might mean that he would never find another job. He did it when his daughters, I believe, were eight and 12. It caused anything that causes the kind of anguish and distress that it causes when he had to have that conversation with his wife about whether or not those holy, false, salacious stories were true or not. That's physical. I think what the Supreme Court talks about in terms of nonphysical injuries is the BMW case where you had property damage to a particular car. You had the TXO case. You had the NC Trust case, which is a breach of fiduciary duty. But any time you have damages for emotional distress and you have the faxes you have here as laid out in the appellate court decision, that's a physical harm. There was some question about whether or not Brown v. Farkas mandated a one-to-one ratio. Well, I don't know whether Brown did, but I know now that Slavinsky does, that the decision below does. The decision below relies on Brown and says one-to-one is appropriate. There was no assessment in this particular case of whether or not the exact amount of $81,600 was an appropriate amount to go ahead and deter other CEOs from similar conduct. The court simply invoked Brown. And what the interpretation was of the Slavinsky decision below was defamation cases are now capped, punitive damages in defamation cases are now capped at compensatory damages. Mr. Leahy, then under Rule 366A5, could we, upon review of all the matters in the case, make our own determination regarding the appropriateness of the punitive damages to the ward? And in this context, how important are the lower court's rulings? Well, I would say the most important ruling is the jury verdict, obviously. And I believe 366 in particular uses the word required, that remitters are appropriate if they're required. And frankly, I'd say that's a pretty powerful word. Certainly it's appropriate to remit when you have liquidated damages or the jury makes a mistake. But where you have unliquidated damages, I think that the remitter perhaps has less utility. In any case, yes, the court could go ahead and make that determination, obviously. But what reviewing courts do, to my mind, Your Honor, would be to say whether or not the decision below was within a reasonable range. I don't believe that reviewing courts ought to be pinpointing amounts. They simply ought to say, is the range reasonable? Is the range appropriate? And what we had in this particular case was now a particular amount that was pinpointed. And what we have is a de facto rule, a de facto ratio that frankly may infect other cases. But the worst problem about this case, frankly, is here you have a defendant, a CEO of a multimillion dollar corporation. We're not talking about a mom and pop operation out of a garage. We're talking about a multimillion dollar corporation. And the defendant specifically refuses to go ahead and answer any questions about his wealth. And then, I mean, admittedly, Mr. Gusak didn't have much to say about it today, but in the brief, that's what he argues. He argues, oh, my gosh, $2 million is a huge amount. Well, one of the factors that the Supreme Court has said is appropriate to consider is the financial benefit to the defendant. Well, in this particular case, the defamation occurred in July of 1996. They had been losing money. This operation was going downhill, and it was going to go down unless, according to the testimony, he put an influx of cash into his business or he got more credit. And he lied to his creditors by targeting his CFO, and he got another year out of this company before it finally went bankrupt. Does that go to the degree of reprehensibility of his conduct? It's another factor in that discussion, in the discussion as to whether or not the punitive damages amount is reasonable. In the end of the day, when you withhold the information, you may help yourself. You may help yourself, and it keeps the damages lower than it would have been if they'd known what you really had. Exactly. That's exactly the problem that this case holds in the future. There are three purposes for punitive damages. Deter the defendant from future conduct similar to the one in the case, punish the defendant or retribution, and the third one is deter others from similar conduct. Well, in this particular case, whether the verdict is excessive with regard to number one and number two, whether it's an appropriate amount to punish the defendant, or whether it's an appropriate amount to deter him from similar conduct in the future, his failure to respond to discovery on the issue of wealth, I think, prohibits him from making that argument on appeal that, in fact, it's too much to satisfy, to fulfill those particular goals, the first and second goals of punitive damages. So really all we're talking about here is number three, and that is, is it sufficient to deter others? And I think that that's what the jury had in mind in particular. You know, you have a CEO who's got financial troubles, and in this particular case, he throws his employee and his reputation and his family life under the bus and sacrifices them for his own financial benefit. A company that was losing $5 million a month goes on for another year. Was there a financial benefit? No question about it. Seen in light of that, was $2 million an excessive amount? I don't think so. But now you have a, you know, the question is going forward, and that's a question you all have to look at. Going forward, what sort of a signal does this case send out? And it may send out exactly that, a defendant who goes ahead and doesn't respond to discovery and then uses that on appeal. And, in fact, there was a motion in limine in this case by the defendants to keep us from talking about the wealth of the defendant. And then you have, on top of that, you have a punitive damages ratio, which caps punitives at compensatories. And they're not, in the future, attorneys aren't going to be citing Brown, they're going to be citing Slavinsky below if this decision is allowed to stand. And so, you know, while the CEO may not face all those issues on his way to that meeting, certainly his lawyer will afterwards, after the defamation, certainly the lawyer will who's considering taking the case. Well, I know the defendant can keep us from going ahead and getting any information about his wealth and the punitive damages are capped. And it was even Judge Posner in the Mathias case that said if you do, and I didn't think, frankly, I'd be citing Judge Posner, but he says if you do go ahead and you do cap punitives like this to a single digit ratio, you're going to have people who find the courthouse door slammed on them. In conclusion, I'd just say the conduct was reprehensible. The harm that was suffered was physical and personal. Any scarcity of evidence of wealth of the defendant is his fault, not ours. Reviewing courts must abide by standards of review and litigants must abide by court orders. The one-to-one ratio of compensatory to punitive damages is now precedent. I would ask this court to reverse and reinstate the jury's verdict, which fulfills the purposes of punitive damages, punishment, and deterrence. Thank you, Your Honors. Thank you, Counsel. Appreciate your courtesy. Case number 107-146 will be taken under advisory.